**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                     **CRIMINAL ACTION**

**VERSUS**                                                           **NO. 24-155**

**CHRISTIAN CONRAD CLAUS**                    **SECTION: D (2)**

## ORDER AND REASONS

Before the Court is a Motion to Suppress Mr. Claus's June 25, 2021 Statement filed by the Defendant Christian Conrad Claus.[1] The Government opposes the motion.[2] The Court set the motion for evidentiary hearing,[3] which was held on May 26, 2026.[4] After careful consideration of the parties' memoranda, testimony during the hearing, oral arguments, the record, and the applicable law, the Court **DENIES** the Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[5]

On June 28, 2024, a grand jury indicted the Defendant, charging him with conspiracy to commit wire fraud (count 1), wire fraud (count 2), mail fraud (count 3), conspiracy to use a facility in interstate commerce in aid of bribery (count 4), use of the internet in interstate commerce in aid of bribery (count 5), and making false statements to a FBI agent (count 6).[6] Count 6, making false statements to the FBI, is largely based on the Defendant's June 25, 2021 phone call with Special Agent Brent

---

[1] R. Doc. 126.
[2] R. Doc. 130.
[3] R. Doc. 138.
[4] R. Doc. 156.
[5] The Factual and Procedural Background of the case has been set out in a previous Order and Reasons from this Court and is adopted here. *See* R. Doc. 149.
[6] R. Doc. 1.

Korhn ("SA Korhn").[7] At the time of the call, the Defendant was an officer with the New Orleans Police Department ("NOPD").[8] On May 11, 2026, the Defendant timely filed the instant Motion to Suppress his statements to SA Korhn during the June 25, 2021 call, arguing violations of his Fifth and Sixth Amendment rights under *Garrity v. New Jersey*.[9] Defendant argues that, because *Garrity* bars admission of statements made by law enforcement officers under the threat of termination in a subsequent criminal proceeding against that law enforcement officer, the admission of SA Korhn's June 25, 2021 interview of the Defendant in this proceeding would violate Defendant's rights under *Garrity*.[10] Defendant further contends that he "faced serious adverse employment action including termination if he failed to cooperate and answer questions being investigated by an 'official entity.'"[11] Defendant maintains that the statements, as a result, must be suppressed and excluded for all purposes, including impeachment, because *Garrity* is "not a prophylactic right akin to *Miranda*, but a fundamental issue of voluntariness."[12] The Defendant also requested an evidentiary hearing.[13]

The Government filed a Response in Opposition to the Defendant's motion.[14] The Government contends that there is no evidence "that Agent Korhn or anyone else threatened or implied that Claus would be terminated if he did not speak to Agent

---

[7] *Id.* at pp. 20-21.
[8] R. Doc. 126-1.
[9] R. Doc. 126 (citing 385 U.S. 493 (1967)).
[10] R. Doc. 126-1 at pp. 3-4.
[11] *Id.* at p. 4.
[12] *Id.*
[13] R. Doc. 126.
[14] R. Doc. 130.

Korhn."[15] The Government states that Defendant's statements should not be suppressed under *Garrity* because the Defendant "did not subjectively believe he was compelled to give a statement to the FBI or lose his job" and because his "claim that his statements were compelled is not objectively reasonable."[16] The Government further argues that "Claus's claimed belief that he would be fired if he did not speak to the FBI is particularly objectively unreasonable considering that the FBI did not have the authority to terminate Claus's NOPD employment."[17] The Government also emphasized that an evidentiary hearing on the present was not warranted because the Defendant "has failed to allege sufficient facts which, if proven, would justify relief."[18]

The Court set the motion for evidentiary hearing or oral argument on May 26, 2026,[19] at which SA Korhn was called by the Defendant and testified and oral argument was presented.[20] This ruling follows.

## II.   LEGAL STANDARD

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself."[21] The Fifth Amendment is not, however, self-executing.[22] As a general rule, an individual who wishes to invoke it must "assert that right specifically."[23] Otherwise, "he will not be considered to have

---

[15] *Id.* at p. 3.
[16] *Id.* at pp. 4, 8.
[17] *Id.* at p. 10.
[18] *Id.* at p. 11.
[19] R. Doc. 138.
[20] R. Docs. 156, 167.
[21] U.S. CONST. amend. V.
[22] *United States v. Vangates*, 287 F.3d 1315, 1320 (11th Cir. 2002).
[23] *Id.* at 1320.

been 'compelled' within the meaning of the Amendment."[24] However, since the Fifth Amendment's privileges are generally not self-executing,[25] an exception emerges when "assertion of the Fifth Amendment privilege is penalized so as to foreclose a free choice to remain silent and compel incriminating testimony."[26]

In *Garrity v. New Jersey*,[27] police officers were being investigated for fixing traffic tickets. Before being questioned, the officers were warned of their rights, including "that if he refused to answer he would be subject to removal from office."[28] The Supreme Court determined that "the choice imposed on petitioners was one between self-incrimination or job forfeiture."[29] The Court ultimately held that an individual was protected from the use of coerced statements in subsequent criminal proceedings when such statements were obtained under the threat of removal from public office.[30] The Government cannot use "the threat of discharge to secure incriminatory evidence against an employee."[31] Before a former police officer's testimony is considered coerced within the meaning of *Garrity*, the former officer must show that he "in fact believed [the] statements to be compelled on threat of loss

---

[24] *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984).

[25] *Vangates*, 287 F.3d at 1320.

[26] *United States v. Guice*, No. 24-13110, 2026 WL 809620 at *4 (11th Cir. Mar. 24, 2026) (quoting *Vangates*, 287 F.3d at 1320).

[27] 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967).

[28] *Id.*

[29] *Id.*

[30] *Id.*; *United States v. Trevino*, 215 F. App'x 319, 321 (5th Cir. 2007).

[31] *Id.* at 499; *see also Garrity*, 385 U.S. at 500 ("We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic.").

of job and this belief must have been objectively reasonable."[32] To determine this, courts "must look at the surrounding circumstances, specifically focusing on whether the questioning was coercive."[33]

The threat of a police officer's termination does not have to be express; "implied threats could violate a defendant's *Garrity* rights."[34] In this manner, when there is no express threat, a court must "determine whether the officer's statements were compelled by examining [the officer's] belief and, more importantly, the objective circumstances surrounding it."[35] Several factors inform the objective inquiry. These factors include, but are not limited to, whether the officer was told that he could freely terminate the questioning,[36] whether the officer was told that he did not have to answer any questions,[37] and whether the officer was notified of his right to remain silent.[38] Courts may also consider whether the officer's supervisors were present at the time he made his statements, as well as any representations that supervisors may have made to the officer.[39] However, a "general directive to cooperate" is not sufficiently coercive to establish an objectively reasonable belief that one would be

---

[32] *Vangates*, 287 F.3d at 1322 (quoting *United States v. Friedrick*, 842 F.2d 382, 395 (D.C.Cir.1988)); *see also United States v. Driggers*, No. 15-CR-00223, 2016 WL 4411362, at *2 (W.D. La. July 28, 2016), *report and recommendation adopted*, No. 15-CR-00223, 2016 WL 4411429 (W.D. La. Aug. 17, 2016).
[33] *Trevino*, 215 F. App'x at 322.
[34] *Id.* at 321.
[35] *Vangates*, 287 F.3d at 1321-22.
[36] *Trevino*, 215 F. App'x at 322.
[37] *Driggers*, 2016 WL 4411362, at *6.
[38] *Id.*
[39] *Trevino*, 215 F. App'x at 322.

sanctioned.[40] Nor is it that a general expectation that police officers will testify is sufficiently coercive.[41]

Additionally, "where there is no direct threat, the mere possibility of future discipline is not enough to trigger *Garrity* protection."[42] Therefore, a court's *Garrity* analysis is two-pronged: the Defendant must show that he believed that refusing to speak would lead to his termination and that this belief was objectively reasonable.

## III.   ANALYSIS

The Defendant argues that the use of his June 25, 2021 interview with SA Korhn in a criminal prosecution violates his rights under the Supreme Court's holding in *Garrity*.[43] Defendant contends that he "had a subjective belief that he was required to answer SA Korhn's inquiries or face termination" and that the belief "that he was compelled to cooperate with SA Korhn's investigation or lose his job" was objectively reasonable.[44] The Government responds that "[i]t is clear that Claus did not subjectively believe that he would lose his job if he refused to answer questions" due to his behavior during the phone call with SA Korhn.[45]

Because courts "must look at the surrounding circumstances, specifically focusing on whether the questioning was coercive" when examining a motion to

---

[40] *Vangates*, 287 F.3d at 1324.
[41] *Benjamin v. Montgomery*, 785 F.2d 959, 962 (11th Cir. 1986).
[42] *United States v. Smith*, 821 F.3d 1293, 1302 (11th Cir. 2016).
[43] R. Doc. 126-1 at pp. 3-4.
[44] *Id.* at p. 4.
[45] R. Doc. 130 at p. 8.

suppress pursuant to *Garrity*,[46] the Court first details those circumstances surrounding the call.[47]

### 1. The Circumstances Surrounding the Defendant's Statement

The following facts are not in dispute: On June 15, 2021, Agent Korhn called the Defendant on his personal cell phone, identified himself as an FBI agent, and asked to speak with the Defendant regarding the investigation of a residential burglary that he responded to as a NOPD Officer.[48] The Defendant immediately responded "Sure, I'd be happy to."[49] Then, the Defendant advised that he was about to take a flight to visit his father and asked if they could speak the week after.[50] The Defendant added, "Feel free to give me a ring or I'll call you."[51] SA Korhn told Defendant that he would text him the item number of the burglary before he called the week after.[52] At the end of the call, Defendant stated, "I'd talk to you right now, but I am surrounded by people and it is not an environment conducive to being able to hear you," and then Defendant closed the call with "I look forward to speaking to you on next Wednesday."[53] Ten days later, SA Korhn called the Defendant back on his personal cell phone, again identified himself as an

---

[46] *Trevino*, 215 F. App'x at 322.

[47] The Court notes that Defendant represented to the Court during the hearing that the he does not contest the absence of an explicit threat that he was going to lose his job if he did not answer SA Korhn's questions.

[48] R. Doc. 130-1, Exh. A ("I wanted to see if you have any impressions on an incident that you responded to. It was over a year ago. I've got an open investigation on a burglary that a guy reported to you guys at NOPD, and I just wanted to see if we could talk over the phone for a few minutes and maybe learn a little more.").

[49] *Id.*

[50] *Id.* ("Claus: I will be back and on duty on Wednesday next week. Can you wait that long? SA Korhn: Absolutely. Yeah, I can call you Wednesday or Thursday of next week.").

[51] *Id.*

[52] *Id.*

[53] *Id.*

7

agent with the FBI, and asked to speak with the Defendant regarding the investigation.[54] Defendant agreed to speak with the agent, and the conversation ensued.[55] There was no explicit threat, either of job security, termination, or any other explicit threat, made by the agent during either call.[56]

In his motion, the Defendant argues that he believed he would be terminated if he refused to speak with SA Korhn and that this belief was compounded by the fact that he was not told by the agent that his statement could be used against him nor that he had the right to end or refuse questioning.[57] The Court thus turns to the surrounding circumstances, specifically focusing on whether the questioning was coercive.[58]

Most of the "surrounding circumstances" in this matter are not in dispute.[59] The facts leading up to the June 25 call are set forth above—and are not in dispute. During the June 25, 2021 phone call, SA Korhn asked Defendant a series of follow-up questions concerning an incident report that Defendant had written in 2019.[60] SA Korhn did not implicate the Defendant's employment status and did not imply that his position as a NOPD officer was in jeopardy.[61] SA Korhn testified that he was at his office when he contacted the Defendant. When the agent called the first time, the Defendant was either en route or at the airport.  During the second call, the

---

[54] The transcript of the June 25, 2021 call is at R. Doc. 126-4.
[55] *Id.*
[56] *Id.* and R. Doc. 130-1, Exh. A.
[57] R. Doc. 126-1 at pp. 2, 4.
[58] *Trevino*, 215 F. App'x at 322.
[59] R. Doc. 167 at pp. 12-13.
[60] R. Doc. 126-4 at pp. 1-2.
[61] R. Doc. 126-4.

Defendant indicated that he was at work.[62]  Agent Korhn further testified that he didn't believe he had ever spoken with the Defendant's NOPD supervisors and was not aware that any NOPD supervisor had ever told the Defendant that he had to speak with the FBI.[63] There is no evidence before the Court that either the agent—or the Defendant—spoke to any NOPD supervisor prior to the call, nor is there any evidence that any NOPD supervisor was present during the call.

The Fifth Circuit has held that a police officer's *Garrity* rights were not implicated where his supervisors were neither present during an interview nor signaled in any way that his job would be in jeopardy if he failed to cooperate with an investigation.[64] Defendant acknowledged during the hearing that there was no evidence before the Court indicating any communication between NOPD supervisors and the Defendant regarding the FBI's investigation or between the NOPD and the FBI regarding the investigation.[65]

As to the FBI's failure to warn Defendant, "[a]lthough *Miranda's* requirement of specific warnings creates a limited exception to the rule that the privilege must be claimed, the exception does not apply outside the context of the inherently coercive custodial interrogations for which it was designed."[66] Similar to *Roberts v. United States*, it is undisputed that Defendant's statement to SA Korhn was not made during a custodial interrogation.[67] He was, as the telephone recording indicates, eating an

---

[62] *Id.* at p. 14.
[63] R. Doc. 167 at p. 14.
[64] *Trevino*, 215 F. App'x at 322.
[65] R. Doc. 167 at p. 25. SA Korhn also testified to this fact at the hearing. (R. Doc. 167 at p. 14).
[66] *Roberts v. United States*, 445 U.S. 552, 560 (1980).
[67] *Id.* at 561.

apple, and apparently at his desk.[68] Further, during the forty-one-minute conversation with SA Korhn,[69] Defendant volunteered information in the form of personal anecdotes as well as his impressions of Zeton based on his interactions with him.[70] Indeed, much of the Agent's communications during the call were simply, "Okay," "uh-huh," and "mmm-hmm (positive response)."[71] The June 25, 2021 call lacks any indicia of a coerced or compelled statement. The failure to provide a *Miranda*-type warning when a *Miranda* warning was not necessary does not bolster Defendant's argument that any subjective belief of termination for failure to talk to the FBI about a case that he had been assigned to investigate as an NOPD officer was objectively reasonable. The Court finds that there is no evidence that the "surrounding circumstances" of the call reveal an implicit or explicit threat. The Court now turns to the Defendant's arguments as to his subjective beliefs and then addresses whether any such subjective belief was objectively reasonable.

### 2. Defendant's Subjective Belief

#### A.  NOPD's Departmental Policies

In his motion, Defendant argues that, under his interpretation of Chapter 26.2.1 of the NOPD Operations Manual, the "Disciplinary Matrix/Penalty Schedule," he was required to answer SA Korhn's questions or face termination.[72] Notably, Defendant did not present any evidence of this subjective belief. During the hearing,

---

[68] R. Doc. 126-4 at p. 1.
[69] R. Doc. 167 at p. 11.
[70] R. Doc. 126-4.
[71] *Id.*
[72] R. Doc. 126-2; R. Doc 126-1 at pp. 1-2.

counsel argued that the Court could determine the Defendant's subjective belief from circumstantial evidence.[73] The Court does not dispute that; instead, the Court notes that there is no record evidence, direct or circumstantial, to support that the Defendant was aware during the call of the NOPD Department Policy and thus believed he was required to answer the agent's questions or be terminated. The Defendant makes no such statement, nor does he even allude to such a concern, during the call.[74]  Neither is there anything in the Defendant's manner of speaking nor tone of voice during the call which evinces such a concern.[75] Finally, the Defendant does not raise any departmental policy compliance concern during the call or in any evidence before the Court. The evidence in the record does not support a finding that Defendant subjectively believed that he must talk to SA Korhn or face termination.

## B.  The Declarant's Background, Education and Experience

The Government points out that, given Mr. Claus's background as an NOPD detective, a lawyer in Las Vegas,[76] and a former prosecutor in Nevada,[77] this Court should not find it objectively reasonable that someone with such legal knowledge could subjectively believe he would face termination if he did not speak to the FBI.[78] Although the Court did not base its decision simply on this information, the Court agrees and holds in addition that it does not support a finding that Defendant

---

[73] R. Doc. 167 at pp. 19-20.
[74] R. Doc. 126-4.
[75] R. Doc. 130-1, Exh. B.
[76] R. Doc. 124-5.
[77] *Id.* at p. 30.
[78] R. Doc. 130 at pp. 4, 10-11.

subjectively believed that he would be terminated should he refuse to talk to SA Korhn. In its analysis, this Court looks again to the Northern District of Georgia, where, in a different matter, that court found that "a seasoned law enforcement officer, fully aware of his constitutional rights," who "chose to stay and [ ] chose to speak because he concluded it was in his interest to do so," is not entitled to *Garrity* protection.[79] In this matter, the Defendant not only answered the agent's call but also offered to call the agent back at another time.[80] Defendant's experience as an attorney, particularly in "police officer internal affairs," raises serious doubt that the Defendant subjectively believed he was in fear of termination, much less that such fear is objectively reasonable.[81] The Court finds that the evidence demonstrates that Defendant did not subjectively believe that he would be terminated should he refuse to speak to SA Korhn.

3.      The **Objective Reasonableness of Any Subjective Belief**

Although the Court has found that there is no evidence that Defendant subjectively believed that he would be terminated should he refuse to cooperate, the Court now turns to the second portion of the analysis: whether any subjective belief was objectively reasonable.[82] In determining objective reasonableness, courts "must look at the surrounding circumstances."[83] NOPD Departmental Policies do not support a finding that any subjective belief by Defendant would be objectively

---

[79] *United States v. Callahan*, No. 1:10-CR-353-WSD, 2011 WL 4479204, at *13 (N.D. Ga. Sep. 26, 2011).
[80] R. Doc. 130-1, Exh. A.
[81] R. Doc. 124-5 at p. 29.
[82] *Vangates*, 287 F.3d at 1322 (quoting *United States v. Friedrick*, 842 F.2d 382, 395 (D.C.Cir.1988)); *see also United States v. Driggers*, No. 15-CR-00223, 2016 WL 4411362, at *2 (W.D. La. July 28, 2016), *report and recommendation adopted*, No. 15-CR-00223, 2016 WL 4411429 (W.D. La. Aug. 17, 2016).
[83] *Trevino*, 215 F. App'x at 322.

reasonable. Rule 2(9) of the NOPD Operations Manual, titled "Failure to Cooperate/Withholding Information," states:

> In accordance with established rights under law, employees shall not withhold any information, acts, or omissions known to the employee that purposefully interfere or disrupt an authorized investigation, whether internally or externally, investigated by any official entity. Additionally, any employee who withholds information or fails to cooperate with any internal investigation may be disciplined in addition to any other disciplinary action based upon conduct disclosed by the primary investigation.[84]

Based on the plain text of the rule, Rule 2(9) only applies when an officer "purposefully interfere[s] or disrupt[s] an authorized investigation."[85] A refusal by Defendant to provide a statement to SA Korhn by asserting his Fifth Amendment right would be an exercise of his constitutional rights. The Rule explicitly begins with "in accordance with established rights under law." The Court agrees with the Northern District of Georgia's decision in *United States v. Hill*, in which that Court held that where a policy does not require an officer to waive his constitutional rights, the "Defendant could not have reasonably believed that he was compelled to make incriminating statements by the threat of termination or some other serious employment sanction."[86]

A reasonable officer reading this matrix would not assume that hanging up on, or refusing to speak to, an FBI agent meant turning in his badge, though he may reasonably expect some disciplinary proceeding. This Court agrees with the Eleventh Circuit's conclusion that "the mere possibility of future discipline is not enough to

---

[84] R. Doc. 126-2 at p. 8, ¶ 26.
[85] R. Doc. 126-2 at p. 8.
[86] *United States v. Hill*, No. CRIM. 1:09-CR-199TWT, 2010 WL 234798, at *8 (N.D. Ga. Jan. 13, 2010).

trigger *Garrity* protection."[87] The Court further points to the Defendant's background, both as an NOPD officer and previously as an attorney who handled criminal law matters, to determine that it would not be objectively reasonable to believe that he feared termination if he did not speak not the agent about the NOPD investigation that he handled as a responding officer.[88]

Finally, the Defendant in his memorandum briefly invokes "heightened federal oversight of NOPD with the consent decree proceedings" as a contributing source of Mr. Claus's objectively reasonable belief.[89] For all the reasons already given, the Court is unpersuaded by this argument that seeks to broaden *Garrity* from cases involving an officer facing the "Hobson's choice" of making an incriminating statement or facing the threat of losing his job to the scale of federal oversight of a municipal police department. After reviewing the totality of circumstances, the Court finds that the evidence does not support a finding that any subjective belief of potential termination, even if there were one, was objectively reasonable.

The Court has determined that Defendant did not establish that he held a subjective belief that he was under threat of termination if he did not answer the agent's questions. Notwithstanding that finding, the Court went on to determine whether any subjective belief, if it had been proven, would have been objectively reasonable. The Court found that any subjective belief was not objectively reasonable under the facts of this case. The Defendant has failed to meet his burden under

---

[87] *Smith*, 821 F.3d at 1302.
[88] *See Callahan*, No. 1:10-CR-353-WSD, 2011 WL 4479204, at *13.
[89] R. Doc. 126-1 at p. 4.

*Garrity* and was not compelled or coerced into speaking to the FBI on June 25, 2021. As a result, the Court must deny the Motion to Suppress Defendant's June 25, 2021 statement.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion[90] is **DENIED.**

New Orleans, Louisiana, June 10, 2026.

WENDY B. VITTER
**United States District Judge**

---

[90] R. Doc. 126.