**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 24-155** |
| **CHRISTIAN CONRAD CLAUS** | **SECTION: D (2)** |

## <u>ORDER AND REASONS</u>

Before the Court is the Government's Notice of Intent to Use Evidence in the above-captioned matter pursuant to Federal Rules of Evidence 404(b).[1] Also before the Court is Defendant Christian Conrad Claus's opposition to the same in the form of a Motion to Prohibit the Government from Offering Certain Evidence at Trial as Described in the "Government's Notice of Intent to Use Evidence."[2] The Government has filed a response in opposition to the Defendant's Motion.[3] After careful consideration of the parties' memoranda, the exhibits in the record, and the applicable law, the Court **GRANTS in part**, **DENIES in part**, and **DENIES as moot in part** the Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[4]

One June 28, 2024, the Government filed an indictment charging Christian Conrad Claus with six counts.[5] These charges relate to an alleged conspiracy by the Defendant, at the time an officer in the New Orleans Police Department, and others

---

[1] R. Doc. 77. While "[t]he government believes none of the evidence it intends to use is subject to 404(b)," the Government gave notice "[t]o avoid any contention that the government failed to provide any required 404(b)(3) notice."

[2] R. Doc. 90.

[3] R. Doc. 94.

[4] The Factual and Procedural Background of the case has been set out in a previous Order and Reasons from this Court and is adopted here. *See* R. Doc. 149.

[5] R. Doc. 1.

to defraud an insurance company through a homeowner's claim of loss regarding a reported theft of valuable works of art. Claus pled not guilty to the charges in the indictment,[6] and his trial is now scheduled for June 15, 2026.[7]

The Government filed a notice of intent to use evidence under Fed. R. Evid. 404(b) on January 26, 2026.[8] While the Government believes that none of the evidence that it intends to introduce falls within the ambit of Rule 404(b), the Government nonetheless identifies the evidence that the Government contends that could be subject to Rule 404(b) includes (A) anticipated testimony from possible witnesses Fouad K. Zeton and Michael Jon Schofield and (B) four sets of exhibits.[9] The four sets of exhibits include (1) Zeton's text messages with the Defendant, (2) documents related to a 2013 dispute over artwork, (3) records concerning Claus's filing for a tax deduction for a December 2015 donation of art, and (4) records regarding Claus's use of the NOPD's CASTNet database to run searches of Zeton's and Zeton's deceased son's criminal history.[10]

After being granted several extensions of time to respond to the Government's Notice,[11] Defendant Claus now moves to prohibit the Government from offering certain evidence at trial as described in the Government's notice.[12] The Defendant

---

[6] R. Doc. 10.

[7] R. Doc. 82.

[8] R. Doc. 77.

[9] *Id*. at pp. 1-2.

[10] *Id*. at pp. 4-6.

[11] *See* R. Docs. 82, 84, and 87.

[12] R. Doc. 90. For reasons unknown, the Defendant filed both a 20-page Motion and a 26-page Memorandum in Support of the Motion. Further, it appears that the margins of Defendant's briefs do not comply with the EDLA Local Rules. *See* LR 7.7 and 10.1. While it would be within the Court's authority to strike the Motion entirely for failure to comply with the Local Rules, the Court does not find that result appropriate in this matter because of the seriousness of the issues raised in the Motion

argues that the evidence is not intrinsic, and that (1) the Court "should deem the Government's Notice insufficient under Rule 404(b)(3)(A)-(C), which requires the Government to provide 'reasonable notice of any such [other bad act] evidence that the prosecutor intends to offer at trial,'" including the permitted purpose for which it intends to use it and (2) the evidence "should be excluded as serving no 'permitted purpose,' or being more prejudicial than probative."[13] The Defendant further asserts an argument foreclosed by Fifth Circuit precedent that the Fifth Circuit should join its sister circuits "in either eliminating or substantially restricting the use of so-called 'intrinsic evidence.'" [14] The Defendant maintains that each of the categories of testimony and evidence enumerated in the Government's Notice is not intrinsic to the charged offenses and should be excluded under Fed. R. Evid. 404(b).[15]

The Government responds that the Court should deny the Defendant's Motion.[16] The Government first contends that "the defendant takes an overly narrow view of what constitutes intrinsic evidence" and that "intrinsic evidence includes evidence of a defendant's background concerning witnesses and coconspirators."[17] The Government next argues that if the Court finds the evidence to be extrinsic, the Government has complied with the notice requirement under 404(b) by identifying the evidence and articulating "non-propensity purposes and the government's

---

and the fact that trial is only two days away. The Court strongly discourages such tactics which could be construed as either an end run or a complete disregard of the EDLA Local Rules.

[13] R. Doc. 90-2 at p. 2.

[14] *Id.* at pp. 6-7.

[15] *See generally id.* at pp. 7-25.

[16] R. Doc. 94.

[17] *Id.* at p. 8.

reasoning."[18] Regarding the Defendant's arguments of prejudice, the Government states that no undue prejudice would occur in this case.[19] The Government notes that evidence of the Defendant's relationship with co-conspirators is admissible and that it is "of heightened importance in this case" because it is needed to show "a close relationship [between co-conspirators] proven by socializing and mutual requests for assistance."[20] Next, the Government argues that the Defendant's experience with art is relevant because "whether *the defendant* was cognizant of [ ] deficiencies in the appraisal cannot be fairly answered without considering the defendant's art background" and because there is a question as to "how Zeton decided to claim that art (of all things) was stolen."[21] Lastly, the Government contends that "the timeline alleged in the indictment and the ongoing nature of the charged crimes" mean that the alleged conspiracy continued "to in or about June 2021," which further supports its argument that the challenged evidence is intrinsic.[22] After detailing the evidence that the Government does not intend to offer in its case-in-chief, the Government then responds to Defendant's arguments and contends that each of the categories consists of evidence intrinsic to the charged offenses.[23]

## II.    LEGAL STANDARD

Federal Rule of Evidence 404(a)(1) prohibits the use of evidence "of any other crime, wrong, or act . . . to prove a person's character in order to show that on a

---

[18] *Id.*
[19] *Id.* at p. 9.
[20] *Id.*
[21] *Id.* at p. 10 (emphasis in original).
[22] *Id.* at p. 11.
[23] *See generally id.* at pp. 12-23.

particular occasion the person acted in accordance with the character."[24]  Under Rule 404(b)(2), however, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[25]  "Generally, "other-acts evidence is not admissible to prove a person possessed a particular character or character trait,"[26] or "to show that the defendant is by propensity a probable perpetrator of the crime charged."[27] The admissibility of "other acts" evidence depends upon whether the evidence is intrinsic or extrinsic to the crimes charged in the indictment.

Evidence intrinsic to the charged offense "is generally admissible so that the jury may evaluate all the circumstances under which the defendant acted." [28] According to the Fifth Circuit, evidence is intrinsic, and therefore not limited by Rule 404(b), when: (1) it is inextricably intertwined with the charged offense; (2) both acts are part of the same criminal episode; or (3) the "other act" was a necessary preliminary step toward the completion of the charged crime. [29]  Additionally, "[i]ntrinsic evidence is admissible to complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all of the

---

[24] Fed. R. Evid. 404(b)(1).
[25] Fed. R. Evid. 404(b)(2).
[26] *United States v. Robert*, Case No. 20-61084, 2021 WL 4484983, at *2 (5th Cir. Sept. 30, 2021) (*citing* Fed. R. Evid. 404).
[27] *United States v. Wiliams*, 708 Fed.Appx. 826, 829 (5th Cir. 2017) (quoting *Old Chief v. United States,* 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)) (citation modified).
[28] *Sumlin*, 489 F.3d at 689 (quoting *United States v. Royal*, 972 f.2d 643, 647 (5th Cir. 1992)) (citation modified).
[29] *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (citing *Sumlin*, 489 F.3d at 689).

circumstances under which the defendant acted."[30]  Notably, "where a conspiracy is charged, acts that are not alleged in the indictment may be admissible as part of the Government's proof, such as evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy."[31]

If the challenged evidence is extrinsic to the charged offense, the Court must make a threshold determination regarding whether there is sufficient evidence to show that the defendant committed the "other act."[32]  If that requirement is met, extrinsic evidence is admissible if it satisfies the two-prong test set forth in *United States v. Beechum*.[33]  First, the Court determines whether the extrinsic evidence is relevant to an issue other than the defendant's character (*i.e.,* motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.).[34] Second, the Court "must determine whether, consistent with Rule 403, the evidence possesses probative value that is not substantially outweighed by its undue prejudice."[35]

---

[30] *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quoting *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996); *United States v. Randall*, 887 F.2d 1262, 1268 (5th Cir. 1989)) (citation modified).

[31] *United States v. Age*, 136 F.4th 193, 220 (5th Cir. 2025) (quoting *United States v. Watkins*, 591 F.3d 780, 785 (5th Cir. 2009); *United States v. Garcia Abrego*, 141 F.3d 142, 175 (5th Cir. 1998)) (citation modified)

[32] *Sumlin*, 489 F.3d at 691 (citing *Beechum*, 582 F.2d at 913).

[33] *Id*. at 690–91 (citing *Beechum*, 582 F.2d 898, 911, 913 (5th Cir. 1978)).

[34] *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008) (quoting *United States v. Sanders*, 343 F.3d 511, 518 (5th Cir. 2003)) (citation modified).

[35] *Id*. at 354 (quoting *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007)) (citation modified).

### III.    ANALYSIS[36]

The Defendant first argues that the use of "so-called intrinsic evidence" should be eliminated or substantially restricted and contends that the "inextricably intertwined test" should be repudiated or reformulated. [37] The Defendant acknowledges, and the Court agrees, that the Fifth Circuit requires courts to apply the intrinsic-extrinsic test when examining evidence under Rule 404(b), and binding precedent forecloses Defendant's argument that the practice of applying the intrinsic-extrinsic rule should be curtailed in the Fifth Circuit.[38] The Court now considers the evidence by applying Fifth Circuit precedent.

### A. Statements Made by Fouad Zeton

#### 1. Allegations about Murder for Hire

The Government's Response has rendered Defendant's Motion as to this evidence moot.[39]

#### 2. Unspecified Prior "Trouble" in Las Vegas

The Government's Response has rendered Defendant's Motion as to this evidence moot.[40]

---

[36] In his Motion, the Defendant specified certain evidence that it maintained should be excluded.  In the Government's response to the Defendant's Motion, the Government made clear that it did not intend to introduce in its case in chief  some of the evidence detailed in the Defendant's Motion.  *See* Government's Response, R. Doc. 94, at pp. 12-13. Defendant's motion as to those pieces of evidence is now moot.

[37] R. Doc. 90-1 at p. 6.

[38] *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) ("First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403."); *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979) ("An act cannot be characterized as an extrinsic act when the evidence concerning that act and the evidence used to prove the crime charged are inextricably intertwined.")

[39] *See* footnote 36.

[40] *Id.*

### 3. Testimony and Evidence about Socializing between Claus and Zeton

The Defendant seeks to exclude any evidence about Zeton's socializing with the Defendant "outside of the alleged criminal conspiracy."[41] The Defendant argues that this evidence "is functionally (if not explicitly) other bad act evidence due to the persistent frauds Zeton has perpetrated in his past and continued to perpetrate" and that "[s]pending extensive [sic] focusing upon the irrelevant personal relationship between [the Defendant and Zeton] implicates Mr. Claus in Mr. Zeton's other bad acts preceding and subsequent to the alleged conspiracy."[42] The Defendant argues that evidence of a friendship outside of a criminal conspiracy "is not inextricably intertwined or a necessary preliminary to the elements of the offense the Government must prove here."[43] The Government responds that the evidence is intrinsic because "it shows the defendant's background concerning a coconspirator (Zeton)" and that even if evaluated under Rule 404(b), "the evidence is admissible because it is (1) relevant to the non-character issue of the Defendant's relationship with Zeton and (2) that relevancy is not substantially outweighed by its undue prejudice."[44]

Generally, "[w]hen a conspiracy is alleged, the Fifth Circuit gives somewhat greater latitude in characterizing evidence as intrinsic." [45] In this matter, the Indictment alleges a conspiracy between the Defendant, Zeton, and Schofield.[46] The

---

[41] R. Doc. 90-2 at p. 10.
[42] *Id.* at p. 11.
[43] *Id.*
[44] R. Doc. 94 at p. 14.
[45] *United States v. Porter*, No. CRIM.A. 12-198, 2013 WL 5673607, at *5 (E.D. La. Oct. 17, 2013) (Vance, J.) (citing *United States v. Girod*, 646 F.3d 304, 320 (5th Cir.2011)).
[46] *See* R. Doc.1.

evidence referenced here helps to explain the relationship between the Defendant and a co-conspirator, Zeton, because the evidence puts the conspiracy into context.[47] The Court finds that the evidence regarding the socializing between the Defendant and Zeton is intrinsic to the charged conspiracy because it aids in demonstrating the nature and closeness of their relationship. Such evidence provides context for the jury to evaluate all of the circumstances under which the Defendant acted.[48] The evidence provides context to the alleged conspiracy and completes the story of the alleged offense.[49]

Further, the Court agrees with the Government that, even if evaluated under Fed. R. Evid. 404(b), the evidence regarding the Defendant and Zeton's socializing is admissible first, because there is sufficient evidence to establish that "other act," namely, an ongoing friendship.  Second, the Court determines that under *Beechum* the social relationship is relevant to a non-character issue—the relationship between co-conspirators in a charged conspiracy.  Finally, the Court determines that the introduction of this relevant evidence is not substantially outweighed by undue prejudice because the acts described are not "prejudicial" within the meaning of the rule. Finally, the Court does not find the evidence excludable under any other Rule 403 analysis. For those reasons, The Defendant's motion is denied as to this category of testimony and evidence.

---

[47] *See United States v. Rivas-Estrada*, 761 F. App'x 318, 324 (5th Cir. 2019) (holding that evidence admitted to show the relationship between a defendant and co-conspirators was intrinsic to the charged offense).

[48] *United States v. Williams*, 277 F. App'x 472, 475 (5th Cir. 2008). Also, *Rice*, 607 F.3d at 141 (5th Cir. 2010).

[49] *Id.*

### 4. Testimony and Evidence about Claus Purportedly Seeking Help in Various Respects from Zeton

The Defendant seeks to exclude evidence "about Mr. Claus purportedly seeking Zeton's assistance—through his connections—with personal family-related lawsuit in which Mr. Claus was a party, as well as in gaining a promotion at NOPD."[50] The Defendant contends that this evidence is "not 'inextricably intertwined' [with] the Government's case that he allegedly solicited Zeton to form a conspiracy to falsely report stolen art, or falsified NOPD record."[51] The Defendant further argues that, because it occurred after the conspiracy had been allegedly agreed to and was in place, "it cannot be a necessary predicate or essential to complete[ ] the Government's story."[52] The Government responds that the evidence is intrinsic to the charged offenses "because it shows the defendant's background concerning a coconspirator."[53]

The Court finds that the text messages regarding the Defendant's promotion to detective within the NOPD are intrinsic to the charged conspiracy. The Indictment alleges a quid pro quo in which the Government alleges that Zeton offered his "assistance in obtaining employment positions" for Claus.[54] As such, these messages referencing same are inextricably intertwined with the charged conspiracy and intrinsic to the offense and part of the same alleged criminal episode.[55] While not

---

[50] R. Doc. 90-2 at p. 12.
[51] *Id.*
[52] *Id.* at p. 13.
[53]  R. Doc. 94 at p. 14.
[54] R. Doc. 1 at p. 17.
[55] *See Crawley*, 533 F.3d at 354 (citing *Sumlin*, 489 F.3d at 689).

conclusive of whether the evidence intrinsic, extrinsic, or even admissible, the Court notes that this information is specifically referenced in the Indictment.[56]

Regarding the text messages referencing investigating individuals involved in the Defendant's domestic lawsuit, the Government argues that the "defendant asking Zeton to facilitate the investigation of an individual is particularly probative of the defendant's relationship with Zeton" because it demonstrates that "the defendant believed Zeton to have substantial government connections" and that "the defendant was comfortable asking his new friend to use those connections for defendant's personal benefit."[57] The Defendant reiterates that his involvement in a domestic lawsuit is not inextricably intertwined with the charged conspiracy.[58] As with the evidence of socializing between the alleged co-conspirators, the Court finds that the evidence cited here helps to explain the relationship between the Defendant and a co-conspirator because the evidence puts the conspiracy into context.[59] The text messages from the Defendant requesting help from Zeton in this manner are probative of the closeness of their relationship and help to complete the story of the alleged conspiracy.[60]

Further, even under a 404(b) analysis, the Court finds the messages relevant to an issue other than character, specifically the relationship between conspirators which goes to intent, plan and knowledge. Finally, to the extent that the Defendant

---

[56] *See* R. Doc. 1 at p. 19 as an Overt act in relation to Count 4.
[57] R. Doc. 94 at pp. 14-15.
[58] R. Doc. 90-2 at p. 13.
[59] *See United States v. Rivas-Estrada*, 761 F. App'x 318, 324 (5th Cir. 2019) (holding that evidence admitted to show the relationship between a defendant and co-conspirators was intrinsic to the charged offense).
[60] *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010).

seemingly argues that "the prejudicial effect substantially outweighs the probative value,"[61] the Court disagrees. The Court does not find any prejudicial effect or any other factor under a Rule 404 analysis, much less any that would be substantially outweighed by the probative value of establishing the conspirators' relationship. If, when such evidence is introduced, the Defendant seeks a limiting instruction, an appropriate limiting instruction will be given to the jury if appropriate.[62] The Court denies the Defendant's motion as it relates to this category of evidence.

### B. Statements Made by Michael Jon Schofield

#### 1. Testimony or Evidence about Claus's Client's Misdeeds

The Government's Response has rendered Defendant's Motion as to this evidence moot.[63]

#### 2.—4. Evidence Relating to Claus's Art Background

The Defendant challenges three groups of testimony from Schofield about the Defendant: (1) testimony and a document concerning the Defendant receiving the right to buy a percent ownership interest in a painting owned by Darrell Coker, (2) testimony and documents about the Defendant seeking a fair market value tax exemption for the value of a painting which he donated to a school, and (3) statements that the Defendant purchased a $4,000-$5,000 painting from Schofield. [64] The Defendant argues that the contract to buy a percent ownership interest "does not

---

[61] R. Doc. 90-2 at p. 13.

[62] *See United States v. Benton*, 637 F.2d 1052, 1057 (5th Cir. 1981) ("The prejudicial effect of the evidence may be reduced … by cautionary instructions from the trial judge."). At the request of the Defendant, the Court will give such a cautionary instruction as appropriate during the trial.

[63] *See* footnote 36.

[64] R. Doc. 90-2 at pp. 15-20.

prove Mr. Claus himself…knew how to value or appraise art, nor assess others' evaluations,"[65] that the evidence related to the tax exemption "do not show Mr. Claus [as] 'experienced in the valuation of paintings' as the Government contends,"[66] and that statements about the purchase of a painting "do not tend to prove that Mr. Claus knew that Schofield's 2019 valuation inflated the values of the paintings Zeton claimed were stolen." [67] The Government responds that the Defendant's "art experience is intrinsic evidence of his background alleged in the indictment" and that the evidence will "allow the jury to fairly assess how the defendant viewed Schofield's appraisal and its stated dollar values."[68] The Government then details the ways in which the evidence demonstrates the Defendant's art background and shows his experience in dealing with art-related transactions.[69]

"Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendant] became a member."[70] Furthermore, evidence of a Defendant's specialized knowledge is intrinsic when it explains the modus operandi of the conspiracy.[71] Here, the Defendant's art background is plainly intrinsic to the charged conspiracy which alleges a conspiracy to commit mail and wire fraud based on allegations of fraudulent stolen art and

---

[65] *Id.* at p. 17

[66] *Id.* at p. 18.

[67] *Id.* at pp. 19-20.

[68] R. Doc. 94 at pp. 16-17.

[69] *See id.* at pp. 17-18.

[70] *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009).

[71] *See United States v. Age*, No. CR 16-32, 2021 WL 6135570, at *6 (E.D. La. Dec. 29, 2021), *aff'd*, 136 F.4th 193 (5th Cir. 2025) (Ashe, J.) (holding that insurance schemes that pre-dated the conspiracy at issue were intrinsic to the charged conspiracy because they "evince the context and Defendants' modus operandi" for committing the offenses charged).

fraudulent valuations of same. [72] The Indictment specifically alleges that the Defendant was "experienced in art-related matters, including the buying and selling of art and litigation related to art."[73] Each of the categories of evidence described in this section relates to the Defendant's background knowledge and experience in art transactions and is intrinsic to the crime charged. Indeed, evidence of the Defendant's background in art "completes the story of the crime" and the allegation that the Defendant was involved in and assisted with the fraud.

Even if analyzed under the Fed. R. Evid 404(b) standard, the Court finds that the evidence would still be admissible under the two-part *Beechum* Test. The evidence regarding the Defendant's art background is relevant to the crimes charged in the Indictment—it has a tendency to support the allegations in the Indictment. Further, the information is being offered for a non-propensity purpose, that is, "the defendant's *background* knowledge," which relates to the modus operandi of the charged conspiracy, as well as the Defendant's knowledge and state of mind.[74] The Court also notes that the groups of testimony are not "bad acts" within the meaning of Rule 404(b), thus the Court finds any unfair prejudice to the Defendant to be non-existent. To the extent that the Defendant argues that the evidence should be excluded as confusing to the jury, the Court disagrees. The jury is well-equipped to make a

---

[72] *See, generally,* R. Doc. 1.

[73] R. Doc. 1 at p. 3.

[74] R. Doc. 94 at p. 18 (emphasis in original); *see also United States v. King*, 861 F. App'x 490, 494 (2d Cir. 2021) (holding that "the jury could reasonably infer from the evidence that [the Defendant's] technical abilities were once substantial and had not diminished over time") (citation modified); *see also United States v. Cruz-Garcia*, 344 F.3d 951, 955 (9th Cir. 2003) (holding that the fact that a Defendant "was intelligent and sophisticated enough to pull off a crime like [the one charged]" was "precisely the kind of evidence 404(b) does not exclude" when the prosecution's theory of the case makes it a central issue).

determination as to what weight, if any, to give to evidence concerning the Defendant's art background. The Court denies the Defendant's motion as it relates to these categories of evidence.

### 5. Statement that Claus Loaned Cryptocurrency to a Company

The Government's Response has rendered Defendant's Motion as to this evidence moot.[75]

### 6. Statement that Claus Allegedly Discussed Using his Escrow Account to Facilitate Schofield's Art Deals

The Government's Response has rendered Defendant's Motion as to this evidence moot.[76]

### 7. Schofield's Discussion of "Various Aspects of the Claim for Stolen Art" with Claus's Girlfriend

The Defendant next seeks to exclude testimony regarding communications between Schofield and the Defendant's girlfriend regarding "various aspects of the claim for stolen art."[77] The Defendant contends that the paucity of information, combined with the information's vagueness, does not provide proper notice.[78] The Government responds that there is "no admissibility issue with Schofield simply mentioning that an individual, who assisted the defendant in administrative tasks, communicated with Schofield about the insurance claim."[79] The Government also represents that it "will not seek to introduce such evidence" that occurred after the alleged crime and that the testimony "will only be referenced in relation to Schofield

---

[75] *See* footnote 36.
[76] *Id.*
[77] R. Doc. 90-2 at p. 21.
[78] *Id.* at pp. 21-22.
[79] R. Doc. 94 at p. 19.

discussing his interactions concerning the preparation and production of the appraisal."[80]

The Court does not have enough information from the memoranda to determine the admissibility of said testimony at this juncture. Thus, the Court defers ruling on the motion to exclude this evidence subject to the re-urging by the Defendant during trial. Neither party should reference this evidence before the Court issues a ruling on it.

### C. Documents Related to a 2014 Lawsuit in which Claus was Counsel for Darrell Coker

#### 1. Text Messages Between Darrell Coker and Roger Dowd

The Government has redacted all but eleven text messages from the chain of over 2,000 text messages[81] and has informed the Court and Defendant that it "does not intend to offer in its case-in-chief the text messages that have been redacted from the government's revised exhibit."[82] The Court thus denies as moot the Defendant's Motion as it relates to the now-redacted text messages. The Court now addresses the remaining eleven texts.[83]

The Defendant argues that the broader group of messages are "not 'inextricably intertwined' with the Government's case" and contends that "the Government's suggestion that Mr. Claus would have known about Schofield's willingness to commit fraud from this exchange is untenable."[84] The Government

---

[80] R. Doc. 94 at p. 19.
[81] R. Doc. 94-1 at pp. 49-55.
[82] R. Doc. 94 at p. 13.
[83] R. Doc. 94-1 at pp. 49-55.
[84] R. Doc. 90-2 at p. 22.

responds that the purpose of introducing the text messages is to demonstrate the Defendant's" possession of derogatory information about Schofield[, which] is relevant to whether the defendant procured Schofield as Zeton's appraiser with intend [sic] to defraud or whether he trusted Schofield's appraisal to be honest."[85] The Government argues that the Defendant's "knowledge of derogatory information about another person may be probative of the defendant's mens rea."[86]

Initially, the Court notes that the Defendant's motion addresses a much broader group of text messages than is now before this Court. As noted above, the Government has redacted the messages; thus there are only 11 text messages now under consideration by the Court.  While the Court has considered the Defendant's arguments in his motion, it is cognizant that those arguments were made regarding the broader group of 2,000 text messages.

Addressing the 11 text messages that the Government seeks to introduce, those text messages purport to accuse Michael (Schofield) of fraud with regard to his art.  The Government advises that the text message were provided to the Government by the Defendant and the Government seeks to introduce them to show "the defendant's possession of derogatory information about Schofield [which] is relevant to whether the defendant procured Schofield as Zeton's appraiser with intent to defraud or whether he trusted Schofield's appraisal to be honest." [87] Thus, the Government asserts that these messages show the Defendant's knowledge of this

---

[85] R. Doc. 77 at p. 5.
[86] R. Doc. 94 at p. 20.
[87] R. Doc. 94 at p. 20.

information which may be probative of his mens rea.[88] The Court agrees that the eleven text messages are intrinsic to the crime alleged in the Indictment. Knowledge of an alleged co-conspirator's conduct is relevant and probative of a Defendant's mens rea in a conspiracy.[89] The text messages contain derogatory information about Schofield, an alleged co-conspirator, and the Government intends to use these messages to show that the Defendant had knowledge of derogatory information about his co-conspirator, specifically that Schofield was an art "forger" and that he "is a thief by forging paintings."[90] For that reason, the Court finds that the messages are intrinsic to the charged conspiracy.

Even if not intrinsic, the Court agrees that Rule 404(b) is not implicated regarding these texts because any "bad act" evidence is not that of the Defendant but of a co-conspirator.[91] The Court finds the text messages relevant for the same reasons as described above—not because they relate to the Defendant's character, but, instead to show intent and absence of mistake or accident. As to Rule 403, any potential for undue prejudice, which the Defendant argued in his motion as to the 2,000 texts, has been remedied by the Government's redactions of the text chain. The redacted text chain does not mention the Defendant and does not include the particular derogatory comment about the Defendant which he highlighted in his

---

[88] *Id.*

[89] *See United States v. Shaw*, 196 F.3d 1257, 1999 WL 800034, at *1 (5th Cir. 1999) (holding that a trial court did not err in permitting the Government to cross examine Defendant regarding his knowledge of a co-conspirator's reputation for altering titles); *see also United States v. Stevenson*, 663 F. App'x 831, 834 (11th Cir. 2016) (holding that knowledge of a person's prior criminal convictions was evidence of the Defendant's having knowingly and voluntarily joined a money laundering scheme).

[90] *See* R. Doc. 94-1 at p. 49 and p. 54.

[91] *United States v. Krezdorn*, 639 F.2d 1327, 1333 (5th Cir. 1981) ("When the evidence will not impugn the defendant's character, the policies underlying Rule 404(b) are inapplicable.").

motion.[92] The Court does not find any unfair prejudice, confusion or any other factor under 403 which warrants the exclusion of these texts. The Court denies the Defendant's motion as it relates to this category of evidence.

### 2. Affidavits and Settlement Letters

The Defendant next challenges the admission of two affidavits from the Defendant's former client Darrell Coker[93] and two settlement letters that the Defendant drafted regarding the 2014 lawsuit.[94] The Defendant argues that none of these documents "discuss how art is valued or the appraisal process" and that the documents reflect "that Mr. Claus' involvement was not arguing over whether an appraisal was accurate or fraudulent, nor [ ] whether the value of a certain piece of art was correct" and was, rather, related to the goods delivered and the price paid.[95] The Defendant contends that the documents do "not show any expertise by Mr. Claus in this field other than his ability to negotiate a settlement when a contract for goods is breached" and that the suit's connection to art is "incidental" and "not inextricably intertwined" with the charged conspiracy in the present case.[96] The Government responds that the evidence is intrinsic to the charged conspiracy because it is probative of the Defendant's art background.[97] The Government notes that the evidence demonstrates that the Defendant "discussed with opposing counsel issues of

---

[92] R. Doc. 90-2 at p. 22.
[93] R. Doc. 90-1 at pp. 156-163
[94] R. Doc. 90-1 at pp. 204-211.
[95] R. Doc. 90-2 at pp. 23-24.
[96] *Id*. at p. 24.
[97] R. Doc. 94 at pp. 16-18.

artworks' authenticity" and "has filed allegations (which [as] the plaintiff's counsel he would have to prove in court) alleging fair market value of numerous artworks."[98]

As the Court stated above, evidence of a Defendant's specialized knowledge is intrinsic when it explains the modus operandi of the conspiracy.[99] The evidence here evinces a more specialized knowledge of art transactions than a normal breach of contract dispute over a contract for goods.[100] The Court finds that these documents are intrinsic to the charged offense because they provide context for the alleged conspiracy and "complete the story of the crime by proving the immediate context of events in time and place, and to evaluate all of the circumstances under which the defendant acted."[101]

Even when viewed as extrinsic to the charged conspiracy, under a *Beechum* analysis, the Defendant's argument fares no better because the evidence is relevant to demonstrate knowledge and intent to commit the charged offenses. To the extent that the Defendant argues that the admission of the probative value of the documents would cause "undue prejudice" under Rule 403, the Court disagrees.  First the Court notes that the documents do not contain "bad acts" within the meaning of Rule 404(b). Addressing the Defendant's argument that the evidence is "temporally distant" from

---

[98] *Id*. at pp. 17-18.

[99] *See Age*, No. CR 16-32, 2021 WL 6135570, at *6 (E.D. La. Dec. 29, 2021), *aff'd*, 136 F.4th 193 (5th Cir. 2025) (Ashe, J.) (holding that insurance schemes that pre-dated the conspiracy at issue were intrinsic to the charged conspiracy because they "evince the context and Defendants' modus operandi" for committing the offenses charged).

[100] *See, e.g.*, R. Doc. 90-1 at p. 209 ("Certificates of Authenticity do not normally come with such art.") and at pp. 204-211 (containing Defendant's use of art terminology throughout correspondence).

[101] *Rice*, 607 F.3d at 141 (5th Cir. 2010) (citation modified); *see also United States v. King*, 861 F. App'x 490, 494 (2d Cir. 2021) (finding that the district court did not abuse its discretion in admitting acts of the defendant that were remote in time in order to demonstrate that the defendant "had the ability (and thus, the opportunity) to commit the charged crimes").

the crime alleged in the Indictment, the Court recognizes the timeframe between the 2014 communications and the allegations in the Indictment which are alleged to have begun in 2019. However, as noted above, this background information is not evidence of other crimes committed by the defendant. Indeed, it is not eve suggestive of such. Instead, it is information that is relevant to prove a rather nuanced part of one's background—namely, his experience in dealing in art and the value of art. Further, the Court again finds that any slight prejudice can be mitigated by a limiting instruction to the jury at the time the evidence is introduced.[102] The Court denies the Defendant's motion as it relates to this category of evidence.

### D. CASTNet Searches

The Defendant's final objection is to the introduction of the Defendant's CASTNet searches of Zeton and Zeton's son performed on October 25, 2019, and November 18, 2019, respectively.[103] As to the search of Zeton, the Defendant argues that "[c]hecking someone's criminal history when responding to a burglary that is reported days after it allegedly occurred, not something aberrant indicating conspiracy.[104] As to Zeton's son, the Defendant states that "checking the criminal history of Mr. Zeton's son as the trial for the man accused of his murder was underway—when the alleged conspiracy had begun weeks prior—is irrelevant."

The Defendant's CASTNet search of Zeton is intrinsic to the charged conspiracy. The action of searching for a co-conspirator on the criminal history

---

[102] *See United States v. Benton*, 637 F.2d 1052, 1057 (5th Cir. 1981) ("The prejudicial effect of the evidence may be reduced … by cautionary instructions from the trial judge.").
[103] R. Doc. 90-2 at p. 25.
[104] *Id.*

database is inextricably intertwined with the charged conspiracy.[105] This search is intrinsic because it provides context for the alleged offenses and thus "so that the jury may evaluate all the circumstances under which the defendant acted."[106]

Even if not intrinsic, the Court finds it admissible under a Rule 404(b) analysis to demonstrate the Defendant's knowledge and intent in allegedly continuing to conspire with Zeton to commit the charged offenses. To the extent that the Defendant contends that such a search of a burglary victim was a normal part of police investigation, such an argument goes to the weight of the evidence and is proper argument and a proper consideration for the jury. The Court denies the Defendant's motion as it relates to the search of Zeton's criminal history.

The Court, however, does not find that the search of Zeton's son is intrinsic to the charged conspiracy because the search, unlike the search of Zeton himself, is not inextricably intertwined with the conspiracy, is not part of the same criminal episode, and was not a necessary preliminary step to the commission of the charged offense.[107] While the Government argues that "it shows the defendant's willingness to use NOPD resources in relation to Zeton," it does not demonstrate that the search of the criminal history of a non-co-conspirator was related to the charged offenses.

Even though the evidence is not intrinsic, it might still be admissible under Fed. R. Evid. 404(b). The Court undertakes a 404(b) analysis. The Court agrees with both parties that the act is a misuse of NOPD resources, making it an "other bad act"

---

[105] *See United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008).

[106] *See United States v. Sumlin*, 489 F.3d at 689 (quoting *United States v. Royal*, 972 f.2d 643, 647 (5th Cir. 1992)) (citation modified).

[107] *Crawley*, 533 F.3d at 354 (5th Cir. 2008) (citing *Sumlin*, 489 F.3d at 689).

under Rule 404(b), and the Court applies the two-part *Beechum* Test.[108] Under the first part of the test, the Court finds the evidence relevant, though only slightly. Secondly, the Court finds that the extrinsic evidence of the search of the NOPD CASTNet is relevant to something more than the Defendant's character.  The Government contends that it does not attempt to introduce the evidence to show that the Defendant is a "bad character" by using the NOPD computer to search for information on Zeton's son, instead, the Government contends that it seeks to introduce the evidence to show the Defendant's "particular interest in Zeton, which would otherwise be unexpected considering that the two men had only recently met" and "it shows the defendant's willingness to use NOPD resources in relation to Zeton."[109] While the Court questions whether those purposes fit within the definition of matters "other than the defendant's character," the Court need not answer that question as it finds the evidence excludable under Rule 403. The Court finds that the danger of injecting details relating to the murder of Zeton's son in this manner into this fraud trial would risk substantial unfair prejudice to the Defendant which outweighs the minimal probative value to the Government..[110] For those reasons, the Court grants the Defendant's motion as to the CASTNet search of Zeton's son's criminal history.

---

[108] *Beechum*, 582 F.2d 898, 911, 913 (5th Cir. 1978).

[109] R. Doc. 94 at p. 22.

[110] Notably, the Indictment (R. Doc. 1) does not mention Zeton's son. To be clear, while the Court excludes this evidence, it will be ready to immediately provide the jury an instruction as appropriate if, during the trial, the murder of Zeton's son comes up.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED in part**, **DENIED in part**, and **DENIED as moot in part**, as set forth above.

New Orleans, Louisiana, June 13, 2026.

**WENDY B. VITTER**
**United States District Judge**